## HARKER v. RALSTON PURINA CO.
### No. 4387.

Circuit Court of Appeals, Seventh Circuit.

Dec. 17, 1930.

Rehearing Denied Feb. 16, 1931.

Paul Y. Davis, Henry H. Hornbrook, Kurt F. Pantzer, and Ernest R. Baltzell, all of Indianapolis, Ind., for appellant.

Rhodes E. Cave, P. Taylor Bryan, George H. Williams, and Thomas S. McPheeters, all of St. Louis, Mo., and James W. Fesler, Harvey J. Elam, and Howard S. Young, all of Indianapolis, Ind., for appellee.

Before ALSCHULER and EVANS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellee is incorporated under the laws of Missouri for the purpose of buying and selling certain natural products and of manufacturing and dealing in certain manufactured products. Section 7, art. 12, of the Constitution of Missouri, provides that no corporation shall engage in business other than that expressly authorized under the charter or the laws under which it is organized. No statute adds to the powers of the corporation. On July 1, 1924, appellee and appellant entered into a contract whereby the former sold to the latter 290 shares of its capital stock at $25 per share; the same being substantially less than the then actual value thereof. The certificate for the shares, then issued in the name of appellant, was assigned to and deposited with appellee as collateral security for the unpaid deferred payments of 90 per cent. of the purchase price. The contract recited that appellant was an employee of appellee, and that the stock was sold to him upon the agreement that, if he should cease to be employed by appellee for any cause other than his death within five years from the date of purchase, appellee, as employer and vendor, should have the option of "taking back said stock," upon paying appellant all purchase price paid by him, plus interest at 6 per cent., but less all dividends. The contract also provided that the certificate for the stock should, and it did, when issued, bear an indorsement reciting such option to repurchase.

Prior to April 15, 1928, appellant completed payment of the purchase price, and on that date his employment had, for some reason, come to an end. Thereupon appellee gave notice that it would take advantage of said option and tendered to appellant the amount due him upon such repurchase. Appellant refused to accept the tender, denied appellee's right to repurchase, demanded the delivery of the stock, and, upon refusal, sued for the conversion thereof.

Upon trial in the District Court appellant contended that the agreement to repurchase was ultra vires of appellee under the Constitution and laws of Missouri; that therefore the stock, having been paid for, was his property, and that a refusal to surrender same worked a conversion of the same by appellee, and rendered it liable for the then market value of some $83,000. Upon this narrow issue the District Court found against appellant, and this appeal followed. The issue here is precisely the same upon which the trial court found against appellant, viz., Was the option ultra vires and therefore void?

If the courts of Missouri have authoritatively passed upon the question arising upon the facts in this record, unquestionably it is the duty of this court to follow such decisions. West Penn. Chem. & Mfg. Co. v. Prentice, 236 F. 891 (C. C. A. 3); Converse

v. Gardner Governor Co., 174 F. 30 (C. C. A. 7). But appellee contends that the precise question here submitted has never been decided by the Missouri courts adversely to its contention, and that the decisions of the courts of that state have involved only cases where to permit a repurchase of its capital stock by a corporation would have worked an injury to creditors or produced an impairment of the corporate capital.

From Chrisman-Sawyer Banking Co. v. Independence Wool Mfg. Co., 168 Mo. 643, 68 S. W. 1029; Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741; Potts-Turnbull Advertising Co. v. Gatchell et al. (Mo. Sup.) 257 S. W. 134; Wilson v. Torchon Lace & Mercantile Co., 167 Mo. App. 305, 149 S. W. 1156, and various other cases cited by appellant, it appears firmly settled that, in the absence of such power in its charter, a Missouri corporation may not repurchase its capital stock, where to allow same would permit subscribers to stock to escape liability or endanger the security of creditors of the corporation or substantially impair the corporate capital. The courts of Missouri were evidently impelled to such sound conclusion upon the ground that the constitutional provision forbidding transaction of business other than that expressly authorized by the charter and the statutes was intended "for the benefit of the public by securing, as far as possible, the integrity of the fund for the protection of those who may deal with it, as well as those who may become the purchasers of its stock upon the faith of the representations made in the act of its incorporation." The basic proposition for the court's conclusion has been that "the withdrawal of this fund, or any part of it, by the stockholders, otherwise than under the sanction of the law in conformity with which it is created, or its application to other uses than those authorized by the laws under which the corporation exists, is a clear violation of the policy of the state as expressed in its Constitution." Hunter v. Garanflo, 246 Mo. 131, 151 S. W. 741, 742.

But an examination of the cases cited discloses that in each of them the transaction held to be ultra vires involved the impairment of corporate capital, the release of subscribers to stock, or other actual or threatened injury to creditors.

In the present case there is involved no release of a subscriber to capital stock. Furthermore, appellee has a great excess of assets over liabilities and a vast surplus for its creditors and stockholders. Appellant alleges that the stock purchased by him for less than $8,000 is now worth in excess of $80,000. To enforce the option will work no impairment of the capital fund, and will in no wise injure or jeopardize creditors. On the contrary, to enforce the option will place upon appellee the duty of paying appellant only the original purchase price, whereas to avoid the option will force appellee to pay what appellant says is ten times the original purchase price and reduce the corporate assets by this vastly greater sum.

Every corporation has the right incidental to its expressed powers and purposes to exercise such incidental power as is necessarily implied in the legitimate achievement of its expressed powers. Among such is the employment of efficient employees. At the time appellee made the contract before us, it contracted for appellant's services for five years, and obligated itself, in consideration therefor, to sell to him some of its capital stock at a price less than its market value. By selling the stock to the employee, appellee made sure that the employee would have a personal interest in the welfare of the corporation. The natural tendency of such interest was to increase the zeal of the employee and thus to forward the chances of success in the corporation's legitimate operations. Furthermore, it enabled the faithful employee, if he continued his employment to the maturity of his contract, to partake of the profits of the corporation. In a word, the contract contemplated the insurance of faithful efficient service to the corporation and a corresponding reward to the employee. Such a contract was clearly praiseworthy in its motives from the viewpoint of both parties, and the option to repurchase was clearly included to encourage the stay of the employee to the end of the period of his employment. In view of the fact that the performance of the option would work none of the results condemned by the courts of Missouri, viz., damage to creditors, impairment of capital, or jeopardy to the financial interests of any interested party, it follows that the contract was clearly within the implied powers of the corporation.

Our examination of Missouri decisions convinces us that the law of that state is not to the contrary, and that, were the identical questions presented to the court of that state, a conclusion similar to our own would result. Indeed, the federal Circuit Court of Missouri, in Burnes v. Burnes, 132 F. 485, 496, found no inhibition in the Missouri law, as

interpreted by the courts of that state, upon "the right of a corporation to take, hold, or own its corporate stock, or to reduce it by purchase and cancel it," where the undesirable results condemned by the courts of Missouri were not present—in other words, "when no creditor is affected, when the corporate assets are not diminished, when no harm is done any stockholder, but when it is to the very great advantage of every remaining stockholder." On appeal, in Burnes v. Burnes, 137 F. 781, 788, the Circuit Court of Appeals for the Eighth Circuit affirmed the decision, saying: "While the powers of a corporation are limited to those expressly granted and those fairly incidental thereto, they include the latter as completely as the former, and they always include the indispensable and the suitable means to exercise the granted powers." Some of the Missouri cases relied upon by appellant were decided subsequent to the decision in the federal court, but we find nothing in any of them extending the doctrine of ultra vires beyond the limitations we have mentioned.

The law quite generally in other jurisdictions is that a corporation may buy its own stock if the purchase is made in good faith and does not prejudice the rights of creditors. This is true when the purchase is made from profits of the corporation and as a part of implied powers of the corporation necessarily incidental to, and reasonably promotive of, its expressed purposes. See Cook on Corporations, vol. 2, § 311; First National Bank v. Salem Capital Flour Mills Co. (C. C.) 39 F. 89; Clapp v. Peterson, 104 Ill. 26; Johnson County v. Thayer, 94 U. S. 631, 24 L. Ed. 133; Lowe v. Pioneer Threshing Co. (C. C.) 70 F. 646; Cross v. Beguelin, 226 App. Div. 349, 235 N. Y. S. 336; O'Brien Merc. Co. v. Bay Lake, etc., Ass'n, 178 Minn. 179, 226 N. W. 513; and Davies v. Montana Auto Finance Corporation, 86 Mont. 500, 284 P. 267.

We are of opinion that the option to repurchase stock as expressed in the employment contract, under the circumstances of this case, is, under the laws of Missouri, clearly within the implied powers of the corporation, that nothing disapproved by the courts of Missouri appears in this record, and that, inasmuch as the performance of the contract will not impair appellee's capital or jeopardize in any way the rights of creditors or any other party in interest, the same is valid.

The judgment of the District Court is affirmed, at the costs of appellant.